1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                          )
SHAWN LEE,                                        )
                                                          )        No. C14-0092RSL
                              Plaintiff,           )
                                                          )        ORDER GRANTING DEFENDANT'S
              v.                                        )        MOTION FOR SUMMARY
                                                          )        JUDGMENT
GENERAL DYNAMICS LAND SYSTEMS,      )
                                                          )
                              Defendant.        )
_____)

14        This matter comes before the Court on "Defendant General Dynamics Land Systems

15   Inc.'s Motion for Summary Judgment." Dkt. # 25. Summary judgment is appropriate when,

16   viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of

17   material fact that would preclude the entry of judgment as a matter of law. The party seeking

18   summary dismissal of the case "bears the initial responsibility of informing the district court of

19   the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to

20   particular parts of materials in the record" that show the absence of a genuine issue of material

21   fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to

22   summary judgment if the non-moving party fails to designate "specific facts showing that there

23   is a genuine issue for trial."  Celotex Corp., 477 U.S. at 324. The Court will "view the evidence

24   in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that

25   party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013).

26

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

1  Although the Court must reserve for the jury genuine issues regarding credibility, the weight of

2  the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support

3  of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v.

4  SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477

5  U.S. 242, 252 (1986). In addition, the non-moving party may not avoid summary judgment

6  simply by filing an affidavit that disputes his own prior statements and omissions or contains

7  nothing more than conclusory allegations unsupported by factual data. See Nelson v. City of

8  Davis, 571 F.3d 924, 927-28 (9th Cir. 2009); Hansen v. U.S., 7 F.3d 137, 138 (9th Cir. 1993). In

9  short, summary judgment should be granted where the nonmoving party fails to offer evidence

10  from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle

11  Network, 626 F.3d 509, 514 (9th Cir. 2010).

12      Taking the admissible evidence in the light most favorable to plaintiff,[1] the Court finds as

13  follows:

14  **BACKGROUND**

15      Plaintiff is an African-American man who was employed by defendant General Dynamics

16  Land Systems from August 2007 to October 2014. He transferred to defendant's Auburn

17  warehouse in December 2011, where his primary responsibilities were evaluating parts from

18  Stryker combat vehicles to determine if they could be repaired or whether they needed to be

19  scrapped. He was a member of the Quality Assurance ("QA") department, which was supervised

20

21      _____

22      [1] Plaintiff presented three declarations in opposition to the motion for summary judgment.
   Statements regarding what a third-party said (such as plaintiff's report that a custodian said he was told
23  to forget what the custodian saw if he wanted to keep his job) are hearsay and cannot be considered for
   the truth of the matters asserted. To the extent the declarants make statements about which he or she
24  does not have personal knowledge (such as plaintiff's report of statements Harris allegedly made while
   in a meeting with human resources), they are inadmissible. Similarly, speculative or conclusory
25  statements (such as Harris' statement that Mayer has a problem with men) are not evidence and have not
   been considered.
26

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        -2-

1  by Brianne Harris, a Caucasian female.

2         In October 2012, plaintiff made two determinations that prompted criticism within the

3  warehouse. Dayra Mayer, the Caucasian supervisor of the Receiving department, thought that

4  plaintiff had erroneously concluded that a part could be fixed while Dwayne Young, the African-

5  American Warehouse Manager, reportedly thought that plaintiff was too quick to discard a

6  different part. Plaintiff did not like the fact that his judgment had been questioned or that the

7  matter had been escalated to the Warehouse Manager without first getting his side of the story.

8  He approached Mayer, Young, and the human resources representative, Patti High, to discuss the

9  matter. High inquired whether plaintiff thought the criticism was racially motivated. At the time

10  he was not sure.

11         In November 2012, a co-worker, Kerri Bingham, told plaintiff that she had been

12  discouraged from applying for a QA position because she was "not dark enough." The individual

13  who made this remark, Bill Hogge, is a non-supervisory employee. Plaintiff heard a rumor that

14  Hogge's advice to Bingham was informed by his conversations with Mayer. At some point,

15  plaintiff became convinced that Mayer had rejected his parts determination because he is

16  African-American. He tried to initiate defendant's dispute resolution procedure and complained

17  to Young of race discrimination in the workplace. When neither Young nor human resources

18  found evidence of discrimination, plaintiff declared that the failed investigations constituted

19  racial discrimination and that he was being subjected to a hostile work environment in retaliation

20  for his compliant. Dkt. # 33 at ¶¶ 10-12.

21         In January 2013, Al Madrona became plaintiff's supervisor. Madrona made jokes

22  regarding watermelon and chicken which plaintiff considered racial. Madrona asked his team to

23  move their start time from 6:30 am to 5:30 am. Plaintiff, noting the length of his commute, said

24  he would try to get there by 5:30 am, but that his official start time was still 6:30 am. In March,

25  plaintiff arrived at work at 5:40 am and 5:34 am on two days and was marked tardy and given an

26

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -3-

Employee Corrective Behavior Report ("ECBR"). Plaintiff pointed out that his official start time was still 6:30 am, and that if Madrona wanted to enforce an earlier start time, he would have to follow company policy to make the change. The next day, he filed a complaint with the EEOC. The ECBR was removed from plaintiff's file.[2]

In August 2013, plaintiff received an ECBR when he failed to secure a load on his forklift, resulting in a piece of equipment falling off and being run over. Plaintiff was "now completely convinced that [he] was being discriminated against because of [his] race and did not know where to turn because Human Resources Manager Jones would not listen to any claims of discrimination." Dkt. # 33 at ¶ 19.

In September 3, 2013, plaintiff refused to respond to a question from Madrona, his supervisor, instead asking him to correspond with via email because plaintiff was feeling antagonized. Madrona responded by lunging at plaintiff as if he were going to physically harm him. Plaintiff reported the incident to Young, who removed plaintiff from the QA department until an investigation could be completed. The investigation was inconclusive, and High and Young tried to smooth things over by telling plaintiff that he had misunderstood Madrona's intentions. Plaintiff was not persuaded, and continued to complain. Another investigation in November 2013 was also inconclusive. Plaintiff filed a report with the police in January 2014 alleging that Madrona assaulted and harassed him. The investigation showed that no crime had been committed.

Plaintiff filed this lawsuit in January 2014. In June 2014, plaintiff reported a potentially unsafe situation to Young: he was told that it was not his job and that a supervisor should have made the report. At about the same time, plaintiff refused to perform a task that he believed fell

---

[2] For purposes of this motion, the Court has adopted plaintiff's version of the events related to the tardiness ECBR, which are not consistent with defendant's version of the events or the documentary evidence. Compare Dkt. # 33 at ¶¶ 15-17 with Dkt. # 27-1 and 27-2.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -4-

1  to another department, announcing that he was not anyone's "lap dog." The co-worker with

2  whom plaintiff was speaking allegedly called plaintiff a "lap dog," stated that plaintiff had no

3  chance of advancement in the company, and revealed that he had been trying to get plaintiff

4  fired for months.

5       On September 4, 2014, Young instructed plaintiff to report for work at the new

6  warehouse that had just opened in Sumner. Plaintiff ignored him, walking outside to smoke a

7  cigarette. When asked at deposition why he would ignore the head of the warehouse, plaintiff

8  stated, "Because he's in on trying to get me up out of there. I'm not going to sit there and get

9  involved in some verbal, you know, disagreement with someone who's clearly trying to sell me

10 down the river." Dkt. # 29-1 at 60. Young followed him outside and again told him to report to

11 Sumner or face suspension. Plaintiff had apparently decided to take some time off, but did not

12 tell Young that. Instead, he simply did not respond. Young returned to the warehouse and

13 reported the incident to human resources. Plaintiff returned to the warehouse and spoke with

14 Harris, who confirmed that plaintiff was to report to Sumner. Plaintiff went to Sumner and called

15 human resources from there. Plaintiff was suspended for thirty days for "failure to follow

16 instructions of supervision" and "conduct that is disorderly, disruptive, unruly or unwelcome . . .

17 ." Dkt. # 26-7 at 8. Plaintiff was advised to return to work on October 6, 2014, and report to

18 Eddie White at the Sumner warehouse.

19      Plaintiff showed up for the morning meeting at the Sumner warehouse as scheduled on

20 October 6th. White asked him to tour the warehouse with him, but plaintiff declined, instead

21 requesting to speak with human resources. Plaintiff apparently felt that he was being paraded

22 around, with the implication being that he did not know which end was up, and was unwilling to

23 play along. When questioned about the possibility that White was just trying to introduce him to

24 the new space and his job duties, plaintiff stated:

25      The bottom line is, is that regardless of what his intentions were, it was still a

26

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT      -5-

hostile work environment because he's – he's part of it. And like I said, before he even went any further with the conversation, I said, I need to see HR because it's the hostile work environment and I didn't ask to come back to your business unit and I don't feel like I'm getting a fair shake, so I – this is a hostile work environment.

Dkt. # 29-1 at 65-66. White continued to insist on touring the warehouse and plaintiff continued to insist that he had a right to speak with human resources first. White suspended plaintiff for failure to comply with instructions. Following an investigation, plaintiff's employment was terminated.

## DISCUSSION

### A. Disparate Treatment

Plaintiff alleges that defendant discriminated against him because of his race in violation of state and federal law.[3] To avoid summary judgment on his disparate treatment claims, plaintiff must present evidence from which a reasonably jury could find "an adverse employment consequence and discriminatory intent by his employer." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 767 (1998). In order to raise an inference of discriminatory animus, plaintiff may offer direct or circumstantial evidence of the employer's discriminatory intent or may utilize the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003); Kastanis v. Educational Employees Credit Union, 122 Wn.2d 483, 491 (1993).[4]

---

[3] Plaintiff has alleged claims under Title VII, § 1981 of the Civil Rights Act of 1964, and the Washington Law Against Discrimination ("WLAD"). He addresses only the Title VII and WLAD claims in his opposition, apparently abandoning the § 1981 claim.

[4] The United States Supreme Court has determined that the distinction between direct and circumstantial evidence is irrelevant. Costa v. Desert Palace, 539 U.S. 90, 100 (2003). The Supreme Court of Washington, however, adheres to the three step McDonnell Douglas analysis if a claim of disparate treatment is based on circumstantial, rather than direct, evidence. Hegwine v. Longview Fibre Co., Inc., 162 Wn.2d 340, 353-54 (2007).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -6-

1    Plaintiff does not attempt to apply the governing law to the facts of this case, instead

2    presenting some sort of hybrid between a hostile work environment claim and a disparate

3    treatment claim. Plaintiff seems to be arguing that he was forced to work in a racially hostile

4    environment and therefore need not prove that the adverse employment actions he experienced

5    were the result of discriminatory animus. Plaintiff has not, however, asserted a hostile work

6    environment claim. Nor could he given that the only admissible evidence of potentially race-

7    based conduct involved Madrona's jokes and Hogge's statement that a Caucasian co-worker was

8    not "dark enough" for a QA position.[5] These statements are simply not severe or pervasive

9    enough to create an actionable hostile work environment. Nat'l R.R. Passenger Corp. v. Morgan,

10   536 U.S. 101, 116 (2002) (in evaluating whether the conditions of plaintiff's employment were

11   altered, courts consider "the frequency of the discriminatory conduct; its severity; whether it is

12   physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

13   interferes with an employee's work performance.").

14   With regards to his disparate treatment claims, many of the events about which plaintiff

15   complains are not adverse employment actions. For example, disagreements regarding the proper

16   disposition of used parts, the seeming discourtesy of not talking to plaintiff about perceived

17   problems before going to the Warehouse Manager, criticism for reporting problems outside the

18   chain of command, a co-worker asking plaintiff to perform a task that was not in his job

19   description and insulting him when he refused, and even a threatening gesture do not affect the

20   terms and conditions of employment and are not, in and of themselves, actionable. Plaintiff has,

21   however, identified three adverse employment actions on which a disparate treatment claim

22   could be based: (1) the ECBR and license suspension related to the forklift incident in August

23   2013; (2) the thirty-day suspension in September 2014; and (3) his suspension and termination in

24   _____

25   [5] Plaintiff provided no admissible evidence that Mayer ever made a race-based statement, much
     less that she had a problem with men or African-American men in the workplace.

26

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -7-

1    October 2014.[6] Taking the evidence in the light most favorable to plaintiff, he has not shown that

2    discriminatory animus motivated or was a substantial factor in any of these actions.

3        **(1) Forklift Incident**

4        Plaintiff does not dispute that both the ECBR and the suspension he received when

5    equipment fell off his forklift were pursuant to company policy. At his deposition, plaintiff

6    acknowledged that he had failed to secure the load and had run over a piece of equipment. He

7    also took the position that Madrona had issued the ECBR because he was upset that plaintiff had

8    ruined his streak of 155 days without an accident. Dkt. # 29-1 at 45-47. In opposing the motion

9    for summary judgment, however, plaintiff changes tack and implies – without actually stating –

10   that Madrona imposed discipline for the forklift incident because he dislikes African-Americans.

11       The only evidence in the record of discriminatory animus on the part of Madrona are the

12   jokes he told and the fact that Madrona made repeated and false accusations that plaintiff was

13   tardy. Plaintiff states that, "[f]rom the beginning of our relationship Madrona made jokes that I

14   considered to be racial, including jokes about me and other African-Americans eating

15   watermelon and chicken." Dkt. # 33 at ¶ 14. No specifics or context are given: plaintiff does not

16   provide any facts from which the jury could, without speculation, infer that the statements are

17   evidence of a dislike of or disdain for African-Americans. With regards to the accusations of

18   tardiness, once Madrona realized that plaintiff's official start time was 6:30 am, he adjusted his

19   expectations accordingly. In addition, plaintiff acknowledges that Madrona was handing out

20   ECBRs "left and right" at that time, negating any inference that plaintiff was singled out because

21   of his race.[7]

22   _____

23       [6] Because the ECBR plaintiff received for tardiness was removed from his file when it became
24   clear that his start time had not been officially changed, no adverse employment action occurred.

25       [7] At his deposition, plaintiff hypothesized that Madrona issued the attendance ECBR as
     retaliation for plaintiff's complaint of race discrimination.
26

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -8-

1    In an apparent attempt to establish a prima facie case of discrimination under McDonnell

2    Douglas, plaintiff states that he witnessed Caucasian employees engage in "the same conduct or

3    actions" who were not disciplined. Dkt. # 33 at 5. Plaintiff offers no information regarding who

4    these co-workers were, the conduct in which they engaged, or the employer's responses thereto.

5    The allegation is little more than a restatement of the fourth element in the McDonnell Douglas

6    analysis and is too general to raise an inference of discriminatory treatment based on race.

7    **(2) September 2014 Suspension**

8    Plaintiff offers no evidence that Young, who is African-American, harbors or was

9    motivated by discriminatory animus when he suspended plaintiff for ignoring instructions to

10   report to the Sumner warehouse for work. Plaintiff acknowledges that he walked away when

11   Young tried to give him his instructions and that he felt justified in doing so because he wanted

12   to avoid a disagreement. Whatever plaintiff's reasons and whatever he did after his interaction

13   with Young on September 4, 2014, the evidence is clear that from Young's perspective plaintiff

14   had ignored a manager's work-related directions and should be suspended as a result. Plaintiff

15   offers no evidence of other employees who walked away from and ignored the Warehouse

16   Manager's instructions but were treated more leniently. Based on the existing record, no

17   reasonable jury could find that race played any part in the September 2014 suspension.

18   **(3) October 2014 Suspension and Termination**

19   Plaintiff virtually acknowledged at his deposition that he has no reason to believe that

20   White's actions on October 6, 2014, were driven or influenced by discriminatory animus.

21   White's intentions were immaterial to plaintiff at the time: plaintiff argues that White was part of

22   a system that was hostile to plaintiff, and he did not feel the need to subject himself to that

23   hostility any longer. Although he did not explain his reasoning to White, it turns out that plaintiff

24   did not want to work at Sumner at all and was refusing to tour the facility with White until he

25   had a chance to pursue his request for a transfer with human resources. From White's

26   perspective, however, plaintiff was refusing a work-related instruction, just as he had in

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -9-

September, and despite warnings persisted in that course of conduct. White, like Young before him, suspended plaintiff for failing to follow instructions. The subsequent investigation confirmed White's version of what happened, and plaintiff's employment was terminated. No inference of racial discrimination arises from the undisputed facts of this case.

**B. Retaliation**

Plaintiff also asserts that defendant retaliated against him for complaining about racial discrimination. To prove a claim of retaliation, plaintiff must show that (a) he engaged in statutorily protected activity, (b) there was an adverse employment action, and (c) retaliation was causally connected to or a substantial factor motivating the adverse action. Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1196-97 (9th Cir. 2003); Kahn v. Salerno, 90 Wn. App. 110, 128-29 (1998). Once a prima facie case of retaliation is presented, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Renz v. Spokane Eye Clinic, P.S., 114 Wn. App. 611, 618 (2002). Plaintiff bears the ultimate burden of persuasion, however, and must raise an inference of retaliation to withstand a motion for summary judgment.

Although plaintiff engaged in statutorily protected activity and was subjected to adverse employment actions, he cannot satisfy the third element of the prima facie case. Plaintiff first complained about racial discrimination in or around October 2012, having become convinced that Mayer had challenged plaintiff's parts determination because he is African-American. The complaint was investigated, but revealed no evidence of discrimination. Plaintiff was not satisfied with the outcome of the investigation and began to feel that everyone involved was hostile to him. Whenever anything negative happened in the workplace thereafter, plaintiff attributed it to either discriminatory intent or retaliation. Additional complaints were made and investigated over the next fourteen months. The last such complaint was made in January 2014 when plaintiff filed this lawsuit. Eight months later, plaintiff was suspended. A month after that, he was terminated. Given the passage of time and the frequency of plaintiff's complaints, no

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -10-

1 | inference of a causal connection arises in this situation.[8]

2 |      Even if the Court were to assume that plaintiff could make out a prima facie case of

3 | retaliation, his conduct – namely failing to secure the load on his forklift, ignoring the

4 | Warehouse Manager, and refusing to tour the new facility – provides legitimate and non-

5 | discriminatory justifications for the adverse employment actions imposed by defendant. Plaintiff

6 | has failed to raise a genuine issue of fact regarding his retaliation claim.

7 |

8 |      For all of the foregoing reasons, defendant's motion for summary judgment is

9 | GRANTED. The Clerk of Court is directed to enter judgment against plaintiff and in favor of

10 | defendant.

11 |

12 |      Dated this 19th day of October, 2015.

13 |

14 | Robert S. Lasnik
United States District Judge

---

[8] In addition, there is no evidence that Madrona was aware of plaintiff's complaints at the time he issued the ECBR for the forklift incident.